**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GEORGIAN AMERICAN ALLOYS, et al., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:20-cv-01634-LPS |
| AXIS INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**OPENING BRIEF OF DEFENDANT AXIS INSURANCE COMPANY**
**IN SUPPORT OF ITS MOTION TO DISMISS**

OF COUNSEL:

Jason P. Cronic (admitted *pro hac vice*)
Matthew W. Beato (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006

February 16, 2021

Robert Katzenstein (No. 378)
SMITH, KATZENSTEIN & JENKINS LLP
Brandywine Building
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE 19899
302-652-8400
RJK@skjlaw.com

*Counsel for Defendant AXIS*
*Insurance Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ....................................... 2

II.     SUMMARY OF ARGUMENT ...................................................................... 2

III.    STATEMENT OF FACTS ............................................................................ 3

     A.     The Policies........................................................................................ 3

     B.     The *PrivatBank* Litigation ............................................................... 5

     C.     The Coverage Dispute........................................................................ 7

IV.    ARGUMENT ................................................................................................ 8

     A.     Standard of Review............................................................................. 8

          i.     Fed. R. Civ. P. 12(b)(6)......................................................... 8

          ii.    Rules of Construction of an Insurance Policy............................. 8

     B.     Coverage for the *PrivatBank* Litigation is barred by the Optima Exclusion.......... 9

     C.     Coverage is also barred under the 18-19 Policy because notice was not furnished within 90 days of the expiration of the Policy Period.......................................... 11

          i.     No choice of law analysis is necessary. .................................... 12

          ii.    Under settled Florida law, the failure to provide notice within the applicable period of the 18-19 Policy precludes coverage. ...................... 13

          iii.   Delaware courts would reach the same result as under Florida law. ........ 14

          iv.   In the event of a conflict, Florida law governs. ....................... 16

          v.     The Insureds' asserted excuse is untenable. ............................ 18

     D.     Coverage is precluded under the 19-20 Policy because the Claim was first made during the 18-19 Policy Period. ............................................................ 19

     E.     The Insureds' "bad faith" count must be dismissed............................. 20

V.     CONCLUSION............................................................................................ 20

**TABLE OF AUTHORITIES**

<b>Page(s)</b>

**Cases**

*4th Street Investors LLC v. Dowdell,*
    No. CIVA 06-536, 2008 WL 163052 (W.D. Pa. Jan. 15, 2008)..............................................12

*Allstate Insurance Co. v. Adrabi,*
    78 So. 3d 7 (Fla. Dist. Ct. App. 2011) .................................................................................9

*Anderson v. Aul,*
    862 N.W.2d 304 (Wis. 2015).................................................................................................15

*Arch Insurance Co. v. Murdock,*
    No. CVN16C01104, 2018 WL 1129110 (Del. Super. Ct. Mar. 1, 2018) ...............................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................................8

*Banjosa Hospitality, LLC v. Hiscox, Inc.,*
    788 F. App'x 531 (9th Cir. 2019) .........................................................................................12

*Bianco Pro. Ass'n v. Home Insurance Co.,*
    144 N.H. 288, 740 A.2d 1051 (1999) ...................................................................................15

*In re Burlington Coat Factory Securities Litigation,*
    114 F.3d 1410 (3d Cir. 1997)..............................................................................................3, 8

*Burns v. International Insurance Co.,*
    929 F.2d 1422 (9th Cir. 1991) ..............................................................................................15

*Catlin Specialty Insurance Co. v. CBL & Associates Properties, Inc.,*
    No. CVN16C07166, 2017 WL 4784432 (Del. Super. Ct. Sept. 20, 2017)............................16

*Certain Underwriters at Lloyds v. Chemtura Corp.,*
    160 A.3d 457 (Del. 2017) ................................................................................................16, 17

*Chas. T. Main, Inc. v. Fireman's Fund Insurance Co.,*
    551 N.E.2d 28 (Mass. 1990) .................................................................................................15

*City of Harrisburg v. International Surplus Lines Insurance Co.,*
    596 F. Supp. 954 (M.D. Pa. 1984) ........................................................................................15

*In re DBSI, Inc.,*
    No. 08-12687, 2011 WL 3022177 (Bankr. D. Del. July 22, 2011) .......................................20

*Devon Park Assoc., L.P. v. Federal Ins. Co.*,
   No. 18-2011-LPS (Transcript at 50-51)(July 29, 2019) ...............................14

*Esmailzadeh v. Johnson & Speakman*,
   869 F.2d 422 (8th Cir. 1989) .........................................................................15

*Feingold v. Graff*,
   516 F. App'x 223 (3d Cir. 2013) .....................................................................8

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ............................................................................3

*George Baum & Co. v. Twin City Fire Insurance Co.*,
   760 F.3d 795 (8th Cir. 2014) .........................................................................17

*Green v. America Online*,
   318 F.3d 465 (3d Cir. 2003) ............................................................................8

*Gulf Insurance Co. v. Dolan, Fertig & Curtis*,
   433 So. 2d 512 (Fla. 1983) ......................................................................13, 14

*Homsey Architects, Inc. v. Harry David Zutz Insurance, Inc.*,
   No. 96C-06-082, 2000 WL 973285 (Del. Super. Ct. 2000).....................14, 15

*Medical Depot, Inc. v. RSUI Indemnity Co.*,
   N15C-04-133, 2016 WL 5539879 (Del. Super. Ct. Sept. 29, 2016) ..........15, 16

*Mid-Continent Casualty Co. v. Royal Crane, LLC*,
   169 So. 3d 174 (Fla. Dist. Ct. App. 2015) ......................................................9

*Mills Ltd. Partnership v. Liberty Mutual Insurance Co.*,
   No. C.A. No. 09C-11174, 2010 WL 8250837 (Del. Super. Ct. Nov. 5, 2010).......17

*New Castle County v. Hartford Accident & Indemnity Co.*,
   970 F.2d 1267 (3d Cir. 1992) ...........................................................................9

*Otto Candies, LLC v. KPMG, LLP*,
   No. CV 2018-0435, 2020 WL 4917596 (Del. Ch. Aug. 21, 2020)................13, 16

*P&S LLC v. National Union Fire Insurance Co. of Pittsburgh, PA*,
   No. 14-CV-00735, 2015 WL 4550322 (D. Colo. July 29, 2015) ...........................11

*Pennsylvania Employee, Benefit Trust Fund v. Zeneca, Inc.*,
   710 F. Supp. 2d 458 (D. Del. 2010)................................................................13

*Pantropic Power Products, Inc. v. Fireman's Fund Insurance Co.*,
   141 F. Supp. 2d 1366 (S.D. Fla. 2001) .....................................................13, 14

*Pellaton v. Bank of New York*,
  592 A.2d 473 (Del. 1991) .................................................................8

*Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.*,
  616 A.2d 1192 (Del. 1992) ...............................................................9

*Richelson v. Yost*,
  738 F. Supp. 2d 589 (E.D. Pa. 2010) ...............................................7

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*,
  181 F.3d 410 (3d Cir. 1999)............................................................19

*Simundson v. United Coastal Insurance Co.*,
  951 F. Supp. 165 (D.N.D. 1997)......................................................15

*St. Paul Fire & Marine Insurance Co. v. Estate of Hunt*,
  811 P.2d 432 (Colo. App. 1991).......................................................19

*Swire Pac. Holdings, Inc. v. Zurich Insurance Co.*,
  845 So. 2d 161 (Fla. 2003)................................................................9

*Terenzio v. LM General Insurance Co.*,
  423 F. Supp. 3d 1354 (S.D. Fla. 2019) ...........................................20

*Textron, Inc. v. Liberty Mutual Insurance Co.*,
  639 A.2d 1358 (R.I. 1994)...............................................................15

*Vozzcom, Inc. v. Great American Insurance Co. of New York*,
  666 F. Supp. 2d 1332 (S.D. Fla. 2009) ...........................................20

In May 2019, the plaintiffs here (a group of individuals and entities insured under two policies issued by AXIS Insurance Company ("AXIS")), were sued by PrivatBank, one of Ukraine's largest private banks, in connection with their asserted role in alleged "brazen fraudulent schemes orchestrated by Ukrainian oligarchs." They hotly contested those allegations, vigorously litigating the case through multiple motions to dismiss and other assorted litigation efforts. What they did not do, however, was provide notice of the claim against them to AXIS within the time specified by the subject claims-made-and-reported insurance policies.

Months after the deadline to report the claim expired, the insureds provided concededly late notice to AXIS. In the face of AXIS's resulting denial, they argued that extenuating circumstances created by the COVID-19 pandemic somehow excused their failure to comply with their contractual obligations under controlling Florida law and that AXIS's various grounds of denial were otherwise unfounded. After AXIS once again explained the multiple reasons why coverage was barred, they took a second bite at the apple and filed this lawsuit, abandoning Florida law and claiming this time that Delaware law somehow preserved coverage.

Regardless of what law controls here, the plaintiffs' coverage claim fails for multiple reasons. First, the PrivatBank lawsuit names as a co-defendant Optima Group, LLC, and the subject policies specifically exclude coverage for lawsuits brought against that entity. Second, the insureds cannot escape the effect of the conceded late notice, as timely notice is a condition precedent to coverage under the policies. That failure abrogates coverage under both the policy in effect when the claim was first made and the policy in effect when the insureds ultimately got around to providing notice. And, finally, the asserted "bad faith" cause of action is legally infirm because there is simply no coverage under the AXIS policies. Accordingly, AXIS respectfully submits this brief in support of its motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## I. NATURE AND STAGE OF THE PROCEEDINGS

This litigation was filed by Georgian American Alloys, Inc. ("GAA"), Felman Trading, Inc. ("Felman Trading"), Mordechai Korf, and Uriel Laber (together, the "Insureds") against AXIS on December 1, 2020. *See* Compl. The litigation concerns coverage for an underlying proceeding (the "*PrivatBank* Litigation"). The Insureds seek coverage under two policies issued by AXIS for the periods of December 1, 2018 to December 1, 2019 (the "18-19 Policy") and December 1, 2019 to December 1, 2020 (the "19-20 Policy"), respectively. This is the first substantive pleading filed following the Insureds' Complaint.

## II. SUMMARY OF ARGUMENT

The Policies do not provide coverage to the Insureds as a matter of law, for any of the following independent reasons:

(1)     The Policies contain an exclusion for any "**Claim**" that is brought against Optima Group, LLC.[1] Optima Group, LLC ("Optima") is a named defendant in the *PrivatBank* Litigation, along with the Insureds. Because the **Claim** is brought against Optima, this exclusion applies to preclude coverage for the *PrivatBank* Litigation.

(2)     Under the 18-19 Policy, the Insureds must furnish written notice to AXIS of any **Claim** as soon as practicable, but at the very latest within 90 days of the end of the **Policy Period**. Because that policy expires on December 1, 2019, the latest date to provide notice was February 29, 2020. The Insureds' notice of the **Claim** on April 21, 2020 does not comply with the notice provision. Under either of the two laws that could potentially apply to this policy—Delaware or Florida—notice provisions are strictly enforced in claims-made-and-reported policies, like the 18-19 Policy, without requiring the insurer to be "prejudiced" by such late

---

[1] Capitalized terms in bold font are defined in the applicable Policy.

notice. As such, the failure to comply with the 18-19 Policy's notice provision bars coverage.

(3)     Under the 19-20 Policy, two **Claims** are deemed to be **Related Claims** if they have as a common nexus *any* "fact, circumstance, situation, event, transaction, cause." The original and amended complaints are nearly identical, and it is therefore obvious that they are **Related Claims**. Because **Related Claims** are deemed made at the time of the first such **Claim**, the **Claim** at issue here is deemed made at the time of the original complaint, which predates the inception of the 19-20 Policy, and thus cannot be covered by that policy's terms.

## III.     STATEMENT OF FACTS[2]

### A.     The Policies

AXIS issued Policy No. MCN798619/01/2018 to GAA (the "18-19 Policy"), attached hereto as Exhibit A,[3] which provides specified coverage for **Claims** first made during the **Policy Period** of December 1, 2018 to December 1, 2019, subject to the condition precedent that such **Claims** are reported in accordance with the terms of the policy. *See* Ex. A, 18-19 Policy, Decls., p. 1 of 4. AXIS subsequently issued Policy No. MCN798619/01/2019 to GAA (the "19-20 Policy," and together with the 18-19 Policy, the "Policies"), attached hereto as Exhibit B, which provides specified coverage for **Claims** first made during the **Policy Period** of December 1, 2019 to December 1, 2020, again subject to the condition precedent that such **Claims** are reported consistent with its terms. *See* Ex. B, 19-20 Policy, Decls., p. 1 of 6.

These Policies are "blended" policies, meaning that they offer several different types of

---

[2] On a motion brought under Fed. R. Civ. P. 12(b)(6), the Court accepts the well-pleaded facts from the Complaint as if they were true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Documents "explicitly relied upon in the complaint" may be considered on a motion brought under Fed. R. Civ. P. 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

coverages addressing different risks, including Management and Entity Liability, Employment

Practices Liability, and Fiduciary Liability. GAA seeks coverage under only the Management

and Entity Liability Coverage Part (the "MEL Coverage Part") of the 18-19 Policy and the 19-20

Policy. *See* Compl. ¶¶ 13-15. The Policies were each issued to GAA at its Miami, Florida

headquarters, and both contain amendatory endorsements mandated under Florida law. *See* Exs.

A & B, Decls.

      Subject to all of its terms, conditions, and exclusions, the 18-19 Policy affords specified

coverage under the MEL Coverage Part for **Loss** that an **Insured Entity** or **Insured Individual**

becomes legally obligated to pay arising from a **Claim** first made during the **Policy Period** or the

**Extended Reporting Period**, if applicable, for a **Wrongful Act**. *See* Ex. A, 18-19 Policy, MEL

Coverage Part, Claims-Made Liability Coverages. The 19-20 Policy contains the same insuring

agreements. *See* Ex. B, 19-20 Policy, MEL Coverage Part, Claims-Made Liability Coverages, p.

1 of 5.

      GAA and Felman Trading are both **Insured Entities** (*see* Ex. A, 18-19 Policy,

Endorsement 6 & Ex. B, 19-20 Policy, Endorsement 2), and Messrs. Dorf and Laber are **Insured**

**Individuals** (*see* Exs. A & B, General Terms and Conditions ("GTC"), Definitions, p. 7).

      As relevant here, the term **Claim** includes "a written demand, including a civil or

criminal complaint[.]" *See* Exs. A & B, GTC, Definitions. Two or more **Claims** are **Related**

**Claims** if they arise out of a single **Wrongful Act** or **Related Wrongful Act**. *See id*. **Wrongful**

**Acts** include any actual or alleged error, misstatement, misleading statement, act, omission,

neglect, or breach of duty by an **Insured Individual** in his or her capacity as such, or the

**Insured Entity**. *See id*. **Related Wrongful Acts** include "all **Wrongful Acts** that have as a

common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally

or logically connected facts, circumstances, situations, events, transactions, or causes." *See id*.

Both the 18-19 Policy and the 19-20 Policy state in bold type on their first page that:

**THIS INSURANCE POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS AND APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIMS MUST BE REPORTED TO THE INSURER IN ACCORDANCE WITH THE REPORTING OF CLAIMS AND EVENTS SECTION**.

Further, the insuring agreements of the MEL Coverage Part of both of the Policies plainly state that "[i]t is a condition precedent [that] . . . all **Claims** are reported to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS[.]" *See* Exs. A & B, MEL Coverage Part, Claims-Made Liability Coverages, p. 1 of 5. That section provides, as relevant here:

- that the **Insured** must provide notice of any **Claim** as soon as practicable, but in no event later than 90 days after the end of the **Policy Period**;

- that a **Claim** is deemed to be first made upon the date of service or other receipt by an **Insured Executive** of a complaint, if a **Claim** takes the form of a civil proceeding; and

- that **Related Claims**, whenever made, are considered to be a single **Claim** deemed made on the date the first such **Claim** was made against any **Insured**.

*See* Ex. A, 18-19 Policy, GTC, Reporting of Claims and Events, pp. 18-19 of 24 & Ex. B, 19-20 Policy, GTC, Reporting of Claims and Events, p. 19 of 25.

Finally, both of the Policies contain an endorsement providing that the respective Policy does not apply to **Claims** brought, *inter alia*, by, on behalf of, or against Optima Group, LLC, its affiliates, or its directors or officers (the "Optima Exclusion"). *See* Ex. A, 18-19 Policy, Endorsement No. 3 & Ex. B, 19-20 Policy, Endorsement No. 4.

## B. The *PrivatBank* Litigation

On May 21, 2019, Joint Stock Company Commercial Bank PrivatBank filed a complaint (the "Underlying Complaint"), attached hereto as Exhibit C, in the Delaware Court of Chancery

5

captioned *Joint Stock Commercial Bank PrivatBank v. Igor Valeryevich Kolomoisky, et al.*, C.A. No. 2019-0377-JRS (the "*PrivatBank* Litigation"). *See* Ex. C, Underlying Compl.

Each of the Insureds was named as a defendant in the *PrivatBank* Litigation. *Id.* at p. 2. In addition, the Underlying Complaint names Optima Acquisitions, LLC; ("Optima"); Optima Ventures LLC; Optima 55 Public Square, LLC; Optima One Cleveland Center, LLC; Optima 1375, LLC; Optima 1300, LLC, Optima 777, LLC, Optima Stemmons, LLC; Optima 7171, LLC, Optima 500, LLC, and Optima 925, LLC (the "Optima Defendants") as defendants. *Id.*

The Underlying Complaint accuses two Ukrainian oligarchs of looting hundreds of millions of dollars from PrivatBank, one of Ukraine's largest privately held commercial banks, through what it calls the "Optima Schemes." *Id.* ¶¶ 1-2. These oligarchs allegedly worked with the Insureds to perpetrate the Optima Schemes by causing PrivatBank to issue hundreds of millions of dollars of illegitimate loans to various entities, including the Optima Defendants, through a sophisticated money laundering process. *Id.* ¶ 3.

The Underlying Complaint asserts that Mr. Korf and Mr. Laber co-own both Optima and GAA, along with the two Ukrainian oligarchs. *Id.* ¶¶ 12-13; 19-20. It also asserts that Felman Trading is a wholly owned subsidiary of GAA. *Id.* ¶ 46. Mr. Korf, Mr. Laber, and the Ukranian oligarchs each allegedly used their positions at Optima, GAA, and Felman Trading, along with the other Optima Defendants, to carry out the Optima Schemes. *Id.* ¶ 3. All of the defendants were served with the Underlying Complaint in July 2019 and filed motions to dismiss shortly thereafter. *See* Ex. D, *PrivatBank* Action Docket Nos. 14, 16, 21.

An Amended Complaint was filed in the *PrivatBank* Litigation on December 18, 2019 ("Underlying Amended Complaint"), attached hereto as Exhibit E, and a second amended complaint was filed thereafter, attached hereto as Exhibit F (collectively, the "Amended

Underlying Complaints"). The Amended Underlying Complaints are substantially similar to the original Underlying Complaint for purposes of this motion.

### C.     The Coverage Dispute

Although the *PrivatBank* Litigation was filed on May 21, 2019, during the policy period of the 18-19 Policy, which requires notice "as soon as practicable," but in no event later than 90 days following the end of the **Policy Period** (*i.e.*, no later than February 29, 2020), the Insureds nevertheless waited <u>until April 21, 2020—*307 days*</u> after they accepted service of the initial complaint—to provide notice of the *PrivatBank* Litigation. *See* Compl. ¶ 11.

Following that untimely notice, AXIS advised the Insureds, in the letter attached as Exhibit G, that coverage was unavailable under the 18-19 Policy because notice was not provided within 90 days of the expiration of the Policy Period. *See* Ex. G, July 21, 2020 Letter, p. 3. In that letter, AXIS also explained that coverage was not available under the 19-20 Policy because the **Claim** was first made prior to the **Policy Period** of the 19-20 Policy. *Id.* Finally, AXIS denied coverage for the independent reason that the Optima Exclusion applied. *Id.* (Any reference to AXIS's denial based on the Optima Exclusion is conspicuously absent from the Insureds' complaint in this litigation.).

When the Insureds challenged that denial (*see* Exhibit H),[4] AXIS responded by coverage counsel though correspondence dated September 24, 2020, attached hereto as Exhibit I. Among other things, that letter refuted the Insureds' contention that the Insureds' notice was timely

---

[4] Although the September 24, 2020 letter by AXIS is specifically referenced in the Complaint, the July 27, 2020 letter from the Insureds, to which that letter responds, is not. The letter may be considered as part of this motion because it is integral to the allegations concerning the September 24, 2020 letter. *See, e.g.*, *Richelson v. Yost*, 738 F. Supp. 2d 589, 595 n.4 (E.D. Pa. 2010) (considering response to letter referenced in complaint as "integral" to complaint on 12(b)(6) motion). In any event, while it may be helpful context for the Court, consideration of the letter is not necessary for disposition of any issues discussed in this memorandum.

under Florida law because AXIS had not demonstrated that it was prejudiced by any late notice.[5]
*See* Ex. I, September 24, 2020 Letter, pp. 2-3.  In response, without further word to AXIS, the
Insureds filed this action.

## IV.     ARGUMENT

### A.     Standard of Review

#### i.     Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  In deciding a 12(b)(6)
motion, the Court may consider the complaint, any document "integral to or explicitly relied
upon in the complaint," *In re Burlington Coat Factory*, 114 F.3d at 1426, and matters subject to
judicial notice.  *Feingold v. Graff*, 516 F. App'x 223, 225 (3d Cir. 2013).

When the plain language of a contract is inconsistent with plaintiff's claims of breach of
contract, the complaint fails to state a claim and is properly dismissed pursuant to Rule 12(b)(6).
*Green v. Am. Online*, 318 F.3d 465, 472 (3d Cir. 2003).  Under those circumstances, any
allegations of bad faith or breach of the implied covenant of good faith fail as well.  *Id.*

#### ii.     Rules of Construction of an Insurance Policy

Insurance policy interpretation is a question of law.  *Pellaton v. Bank of N.Y.*, 592 A.2d

---

[5] Contrary to the allegations of the Complaint, which assert that AXIS never referenced any
prejudice arising from the Insureds' failure to comply with the 18-19 Policy's Condition
Precedent regarding notice, the September 24, 2020 letter does identify prejudice arising from
the late notice.  *See* Ex. I, September 24, 2020 Letter, p. 3.  In doing so, however, AXIS made
clear that such prejudice was legally irrelevant.  *Id.*

473, 478 (Del. 1991); *Allstate Ins. Co. v. Adrabi*, 78 So. 3d 7, 7 (Fla. Dist. Ct. App. 2011).[6]

Insurance policies are contracts and are subject to the same rules as contracts generally. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992); *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. Dist. Ct. App. 2015). "The parties are bound by the plain meaning of the policy, because manufacturing an ambiguity creates a new contract with rights, liabilities and duties to which the parties did not assent." *New Castle Cnty. v. Hartford Accident & Indem. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992) (Delaware law); *accord Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("[I]nsurance contracts must be construed in accordance with the plain language of the policy . . . [and courts may not] rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.").

**B.      Coverage for the *PrivatBank* Litigation is barred by the Optima Exclusion.**

Dismissal of this action is appropriate based on the straightforward ground that the **Claim** is barred by the Optima Exclusion contained in both of the Policies.[7]  That exclusion provides:

> . . . this Policy does not apply to:
>
> 1.      any **Claim** brought by, on behalf of, or against Optima Group, LLC, Haftseek Investments, Ltd., or G.M. Georgian Manganese Holdings Ltd., or any past or current subsidiary or affiliate of Optima Group, LLC, Haftseek Investments, Ltd., or G.M. Georgian Manganese Holdings Ltd., (collectively, the "Excluded Entities");

---

[6] The Insureds have taken inconsistent positions regarding the law governing the AXIS policies, relying on Florida law in the face of AXIS's denial and then Delaware law in their present complaint. *See* Ex. H, July 27, 2020 Letter, p. 2 & Compl. ¶¶ 23-34.  As discussed further herein, however, both states' laws confirm the lack of coverage for the *PrivatBank* Litigation.

[7] As to the Optima Exclusion, the Court need not make a choice of law determination because the result would be the same under basic principles of either Delaware or Florida law. *See* discussion *infra* Section V.C.1.

2. any **Claim** brought by, on behalf of, or against any past or current director, officer, trustee or similar executive or employee of any Excluded Entity; or

3. any **Claim** or portion of any **Claim** based upon or arising out of any **Wrongful Act** by any **Insured** in his, her, or its capacity or by reason of his, her, or its status as a director, officer, trustee or similar executive or employee of any Excluded Entity.

Ex. A, 18-19 Policy, Endorsement No. 3 & Ex. B, 19-20 Policy, Endorsement No. 4. There can be no doubt that the *PrivatBank* Litigation is a **Claim** (*see infra* Section IV.D) or that the *PrivatBank* Litigation was "brought . . . against . . . Optima Group." Ex. C, Underlying Compl. ¶¶ 25, 27-38. Optima is a defendant in the *PrivatBank* Litigation; the *PrivatBank* Litigation was therefore "brought . . . against" it. The Optima Exclusion thus applies.

This clear-cut application of the plain language of the Optima Exclusion to the allegations of the Underlying Complaints should end the Court's analysis. Although Optima's presence as a defendant is sufficient to trigger application of the Optima Exclusion, this conclusion is reinforced by the fact that the *PrivatBank* Litigation includes twelve Optima Defendants (each of which is an "affiliate" of Optima), arises from what is called the "Optima Scheme," in which these entities allegedly took a central role, and includes allegations against Mr. Korf and Mr. Laber in their Optima capacities (*id.* ¶¶ 13, 20). Each of these facts provide independent bases to trigger the Exclusion, the plain language of which establishes that AXIS did not undertake to insure disputes that involve the Insureds' other business venture.

Previously, the Insureds asserted that the Optima Exclusion should not preclude coverage in its entirety, but rather that an allocation should somehow be required. The Insureds point to a provision in the Policies that permits allocation of **Loss** incurred jointly between **Insureds** and non-insureds. But this assertion rests on the inaccurate supposition that the provision was merely designed to declare that Optima was not an **Insured**. This does not make sense. Even without an exclusion, Optima is not an **Insured** under the Policies; it is an independent entity also

controlled in part by Mr. Korf and Mr. Laber. *See* Ex. C, Underlying Compl. ¶ 27. It is axiomatic that AXIS need not exclude what is not covered by the Policies' terms in the first place. If the Policies for some reason needed a provision to doubly ensure that Optima and its affiliates were not **Insureds**, the Policies would say just that—they would include a provision providing that those entities are not **Insureds**. The language of the Optima Exclusion is broader and applies to "any **Claim**." That language must be enforced according to its terms.

Caselaw likewise confirms this result. Courts considering similar specific entity exclusions have rejected arguments akin to the Insureds' here, instead enforcing such exclusions pursuant to their plain terms. For instance, in *P&S LLC v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 14-CV-00735, 2015 WL 4550322, at *3 (D. Colo. July 29, 2015), *aff'd*, 650 F. App'x 561, 563 (10th Cir. 2016), the court considered an exclusion that precluded coverage for "any Claim made against . . . Private Escapes Holdings, LLC." The court held that even if the underlying action alleged otherwise covered wrongful conduct against an insured person in his capacity as such, it "d[id] not change the fact that the loss alleged was in connection with a claim against Private Escapes." *Id.* at 4. As such, the exclusion was "unambiguously applicable to bar coverage" for the entire claim. *Id.* So too here.

While the Complaint makes no mention of the Optima Exclusion, it is nonetheless fatal to the Insureds' action against AXIS. The underlying action's allegations against Optima cannot be overlooked, and they trigger the Optima Exclusion's plain terms, barring coverage under both Policies. As a result, the Complaint must be dismissed.

### C. Coverage is also barred under the 18-19 Policy because notice was not furnished within 90 days of the expiration of the Policy Period.

The Policies are, in relevant part, claims-made-and-reported policies. Under a claims-made-and-reported policy, "the insured is required to report the claim to the insurer within the

policy period, or within a specified time after learning of the claim." *4th St. Invs. LLC v. Dowdell*, No. CIVA 06-536, 2008 WL 163052, at \*6 n.2 (W.D. Pa. Jan. 15, 2008), *aff'd*, 340 F. App'x 99 (3d Cir. 2009).

Here, the Insureds did not report the claim within the time specified by the 18-19 Policy. That Policy provides that notice must be furnished "as soon as practicable," but "in no event later than 90 days following the end of the **Policy Period**, and includes a prominent disclaimer on the first page referencing the reporting requirement. *See* Ex. A, 18-19 Policy, GTC, Reporting of Claims and Events, Section B, p. 19 of 24. Because the 18-19 Policy expired on December 1, 2019, the 90-day cut-off was February 29, 2020. The Insureds' notice on April 21, 2020 came well after that date.

The Insureds exhort this Court to excuse their violation of the express condition precedent by requiring AXIS to demonstrate "prejudice." "Nationwide," all state supreme courts to consider the issue under state common law have "uniformly [] rejected the argument" that an insurer is required to demonstrate "prejudice" in order to deny coverage where a claim is reported outside of the fixed period prescribed in a claims-made-and-reported policy. *Banjosa Hosp., LLC v. Hiscox, Inc.*, 788 F. App'x 531, 532 (9th Cir. 2019) (collecting authority; alterations and citations omitted). Presumably because the Florida Supreme Court is one of those courts, the Insureds have retreated from their original position that Florida law is relevant and now argue that Delaware law controls. However, as discussed below, all courts applying Delaware law to consider the issue have also enforced these requirements, so long as the policy at issue does not expressly provide otherwise. Accordingly, given the plain terms of the Policies here, this Court should do the same regardless of what law applies, and regardless of "prejudice."

i.    No choice of law analysis is necessary.

Per the Complaint, the named insured is incorporated in the State of Delaware and has its

12

principal place of business in Florida, where the Policies were issued. Compl. ¶ 2. While the Insureds originally relied on Florida law, the Complaint suggests that Delaware law is instead applicable to interpreting the Policy terms. *See* Compl. The Court must therefore resolve any choice of law issue through reference to Delaware's choice of law principles. *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010).

In assessing conflicts issues, Delaware courts first look to see if the "ultimate result would be the same under either proposed jurisdiction"; if that is the case, there is a "false conflict" and the court must not conduct a choice of law analysis. *Otto Candies, LLC v. KPMG, LLP*, No. CV 2018-0435, 2020 WL 4917596, at *5 (Del. Ch. Aug. 21, 2020). Here, the result is the same under Florida or Delaware law; accordingly, no further analysis is required.

ii.    <u>Under settled Florida law, the failure to provide notice within the applicable period of the 18-19 Policy precludes coverage.</u>

The Florida Supreme Court has held that the "essence" of a claims-made-and-reported policy is that a Claim be both made and reported during a fixed period. *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515 (Fla. 1983) ("Claims-made or discovery policies are essentially reporting policies."). According to the court, imposing a "prejudice" requirement for such policies would be "tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained." *Id.*; *see also Pantropic Power Prods., Inc. v. Fireman's Fund Ins. Co.*, 141 F. Supp. 2d 1366, 1369 (S.D. Fla. 2001) (to same effect), *aff'd*, 34 F. App'x 968 (11th Cir. 2002). The Florida Supreme Court went on to state:

> An underwriter who is secure in the fact that claims will not arise under the subject policy . . . after its termination or expiration can underwrite a risk and compute premiums with greater certainty. The insurer can establish his reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiraling jury awards, or later changes [in the law].

*Dolan*, 433 So.2d at 516 (citation omitted). This decreased risk benefits policyholders in the

form of lower premiums.  *See id.*

This result is not affected by the fact that AXIS issued the 19-20 Policy, a renewal of the 18-19 Policy.  The holding in *Pantropic* is instructive in this respect.  The insurer in that case also issued consecutive policies which limited coverage to claims first made during the policy period and reported to the insurer within sixty days of the expiration of the respective policy. *Pantropic Power Prods., Inc.*, 141 F. Supp. 2d at 1368.  A claim was made against the policyholder during the first policy period but not reported to the insurer until seventeen days after the expiration of the reporting period under the first policy.  *Id.* at 1369-70.  The court held that no coverage was available under either policy, regardless of "prejudice" to the insurer, because the claim was made during the first policy period but not reported until after that policy expired.  *Id.* at 1370.  The court explained that the claim "did not fall into cracks between the two policies, nor was the coverage illusory.  Had [the policyholder] reported the claim during the policy period *in which it was asserted* against [the policyholder], [the insurer] would have been obligated to defend the claim."  *Id.*  (emphasis in original).

Like the insured in *Pantropic*, the Insureds have failed to report a Claim during the reporting period of the 18-19 Policy.  The Court must therefore enforce that Policy's plain language, under which the Insureds have failed to satisfy an essential condition precedent to coverage.

iii.     <u>Delaware courts would reach the same result as under Florida law.</u>

Delaware law is no different, as it provides that an insurer need not demonstrate prejudice in order to deny coverage for late notice under a claims-made policy.  *Devon Park Assoc., L.P. v. Federal Ins. Co.*, No. 18-2011-LPS (Transcript at 50-51)(July 29, 2019) (Exh. 1).  *See Homsey Architects, Inc. v. Harry David Zutz Ins., Inc.*, No. 96C-06-082, 2000 WL 973285, at *12-13 (Del. Super. Ct. 2000) (holding that "the insurer does not have to show prejudice when it denies

coverage under a claims-made policy" for late notice). This is because, like Florida, Delaware "recognize[s] the fundamental difference between claims-made and occurrence based policies." *Homsey Architects*, 2000 WL 973285, at *12 (citing *Hoechst Celanese Corp. v. Certain Underwriters at Lloyd's*, 656 A.2d 1094, 1095 n.1 (Del. Super. 1995)).[8]

In an effort to avoid this conclusion, GAA relies in its complaint on *Medical Depot, Inc. v. RSUI Indemnity Co.*, N15C-04-133, 2016 WL 5539879 (Del. Super. Ct. Sept. 29, 2016), a case that involved materially distinguishable policy language. The *Medical Depot* court agreed that "[t]he essence of a claims-made policy is notice to the insurer within the policy period." *Id.* at *13. The policy at issue in that case, however, permitted the insured to provide notice "during the Policy Period, *or any subsequent renewal of this policy*." *Id.* at *3 (emphasis added); *see also id.* at *11 (permitting notice "DURING THE POLICY PERIOD, *ANY SUBSEQUENT RENEWAL* AND ANY APPLICABLE DISCOVERY PERIOD") (emphasis added). The *Medical Depot* court expressly relied upon this language to conclude that notice was provided "within the policy period." *See id.* at *11, *13 ("Medical Depot did provide notice within 'any subsequent renewal' . . . [therefore] Medical Depot did provide notice within the period of coverage under the Policy."). Because the notice was provided *inside* the period prescribed by the policy, the *Medical Depot* court imposed a prejudice requirement—while agreeing that such

---

[8] Indeed, as the *Homsey* court observed, nearly every court to consider the issue has held that common law notice-prejudice rules that generally apply to all other types of insurance policies are inapplicable to a date-certain requirement in a claims-made-and-reported policy—and the list of such cases has only grown since *Homsey* was decided. *See, e.g.*, *City of Harrisburg v. Int'l Surplus Lines Ins. Co.*, 596 F. Supp. 954, 962 (M.D. Pa. 1984), *aff'd*, 770 F.2d 1067 (3d Cir. 1985); *Anderson v. Aul*, 862 N.W.2d 304, 324 (Wis. 2015); *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1425 (9th Cir. 1991) (California law); *Bianco Pro. Ass'n v. Home Ins. Co.*, 144 N.H. 288, 296, 740 A.2d 1051, 1057 (1999); *Textron, Inc. v. Liberty Mut. Ins. Co.*, 639 A.2d 1358, 1363 (R.I. 1994); *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 424 (8th Cir. 1989) (Minnesota law); *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 551 N.E.2d 28, 30 (Mass. 1990); *Simundson v. United Coastal Ins. Co.*, 951 F. Supp. 165, 167 (D.N.D. 1997).

a requirement for notice furnished *outside* that period would impermissibly "convert[] the policy to an occurrence policy, for which the insured has neither bargained for nor paid for." *Id.* at *13.

Simply stated, *Medical Depot*'s conclusion has no application to the policy language at issue here. The 18-19 Policy includes no provision providing that notice is permissible during "any subsequent renewal" of it. Rather, it specifically states that notice is required in writing "in no event later than 90 days after the end of the **Policy Period**." Ex. A, 18-19 Policy, GTC, Reporting of Claims and Events, Section B.1, p. 19 of 24. Because notice was furnished outside of the "period of coverage under the Policy," *Medical Depot*, 2016 WL 5539879, at *13, AXIS need not show prejudice under Delaware law even accepting *Medical Depot*'s holding.

        iv.    <u>In the event of a conflict, Florida law governs.</u>

As indicated, no choice of law analysis is needed here. *Otto Candies*, 2020 WL 4917596, at *5. However, even if there were the potential for different results, Florida law would apply.

The most significant exposition of Delaware law concerning choice of law under insurance contracts is *Certain Underwriters at Lloyds v. Chemtura Corp.*, 160 A.3d 457, 459 (Del. 2017), which applies the "most significant relationship" test from the Restatement (Second) of Contracts. *Chemtura* recognizes that for a "contract setting up a comprehensive, nationwide insurance program," the company's headquarters is typically the location with the most significant relationship to the contract, because "comprehensive insurance programs [have] to have a single interpretive approach utilizing a single body of law," and a company's headquarters is typically the place a contract is negotiated, carried out, and the principal place of business. *Id.* at 459-60, 470; *Catlin Specialty Ins. Co. v. CBL & Assocs. Props., Inc.*, No. CVN16C07166, 2017 WL 4784432, at *5 (Del. Super. Ct. Sept. 20, 2017) (under *Chemtura*, the most significant relationship is generally the principal place of business of the insured).

Here, the 18-19 Policy indicates that it was issued to GAA at its headquarters in Miami,

Florida.  *See* Ex. A, 18-19 Policy, Decls., p. 1 of 4 & Underlying Compl., ¶ 2.  Further, the

Policy includes several Florida-specific provisions (*see, e.g.*, Ex. A, 18-19 Policy, Endorsement

No. 1).  *See George Baum & Co. v. Twin City Fire Ins. Co.*, 760 F.3d 795 (8th Cir. 2014) (citing

significance of state endorsements when determining law applicable to insurance policy).

Indeed, the Insureds essentially recognized that Florida law controls when challenging AXIS

regarding the effect of Florida claims-handling regulations on its coverage determination.  *See*

Ex. H, July 27, 2020 Letter, p. 2.  Thus, under *Chemtura*, Florida law should control.

     *Chemtura* recognized that for contracts addressing a single subject, the law of the state

where the "principal location of the insured risk" is located will typically have the most

significant relationship, quoting Section 193 of the Restatement.  *See Chemtura*, 160 A.3d at

467.  Under this reasoning, several Delaware trial courts have held that policies affording *only*

directors and officers liability coverage should be governed according to the law of the insured's

state of incorporation, relying on a comment to Section 193.  *See, e.g.*, *Mills Ltd. P'ship v.

Liberty Mut. Ins. Co.*, No. C.A. No. 09C-11174, 2010 WL 8250837, at *5 (Del. Super. Ct. Nov.

5, 2010); *Arch Ins. Co. v. Murdock*, No. CVN16C01104, 2018 WL 1129110, at *9 (Del. Super.

Ct. Mar. 1, 2018).  Whatever the merits of this reasoning to policies affording *solely* directors

and officers liability coverage, it has no application to the broad and comprehensive Policies

here, which sets forth numerous types of coverages that have nothing to do with directors and

officers, including general entity liability, employment practices liability, workplace violence

liability, and fiduciary liability related to employee benefits.  Because "comprehensive insurance

programs [must] have a single interpretive approach utilizing a single body of law," *Chemtura*,

160 A.3d at 460, any special choice of law rule applicable to single-subject directors and officers

liability policies is inapplicable here.

As discussed above, both Florida and Delaware law require that the Court enforce the express condition precedent of timely notice in claims-made-and-reported policies.  The Insured's complaint frames enforcement of this well-established case law as a "gotcha" forfeiture based upon a technicality and that AXIS ignored "extenuating circumstances created by the COVID-19 pandemic" in the course of enforcing the policy language.  Compl. ¶ 22.  But case law does not permit courts to excuse compliance with notice provisions under claims-made-and-reported policies, and, even if it did, the Court can take judicial notice of facts that conclusively undermine the Insureds' proffered excuse and the serious charge they have made against AXIS.

First, the 18-19 Policy requires notice of a **Claim** "as soon as practicable," but "in no event" later than February 28, 2020.  The Insureds were served with copies of the Underlying Complaint in June 2019.  *See* Ex. D, *PrivatBank* Litigation Docket, Filing No. 8.  By July 2019, they had retained defense counsel, (including Kasowitz Benson Torres, the same firm representing them in the instant litigation) and filed a motion to dismiss.  *See* Ex. D, *PrivatBank* Litigation Docket, Filing Nos. 14 and 16.  In the ensuing months, the Insureds filed numerous motions and responses in the *PrivatBank* Litigation.  It is therefore not possible that the Insureds and their counsel were fully incapacitated and incapable of complying with the notice provision until April 21, 2020.

Second, it is impossible that the COVID-19 pandemic precluded the Insureds from affording notice for the entirety of the period between July 2019 and February 2020—most glaringly because COVID-19 was not yet even a known pathogen for the majority of that time.

And finally, although the Insureds previously stated that Mr. Korf's COVID-19 diagnosis precluded them from providing timely notice, Mr. Korf told the Court of Chancery, in a letter attached hereto as Exhibit J, that he was not diagnosed with COVID-19 until early April 2020

and remained seriously ill into May 2020.  *See* Ex. J, May 4, 2020 Letter.[9]  Yet, <u>while Mr. Korf</u>

<u>was ill with COVID-19, the Insureds provided notice of the *PrivatBank* Litigation to AXIS</u>.

Given its ability to litigate the underlying action, there is no justification for disregarding with

the Policy's admonition to provide notice as soon as practicable, let alone excuse the condition

precedent of notice within the ninety-day period following its expiration.  That the Insured

procrastinated or ignored its obligations should not protect it from the Policy's plain terms.[10]

> **D.      Coverage is precluded under the 19-20 Policy because the Claim was first made during the 18-19 Policy Period.**

Under the 19-20 Policy, a **Claim** includes "a civil . . . complaint[.]"  *See* Ex. B, 19-20

Policy, GTC, Definitions, p. 1 of 25.  The 19-20 Policy provides that **Claims** are **Related**

**Claims** if they arise from a single **Wrongful Act** or **Related Wrongful Act**.  *See id*.  **Related**

**Wrongful Acts** include all **Wrongful Acts** that have as a common nexus any fact, circumstance,

situation, event, transaction, or cause, or series of causally or logically connected facts,

circumstances, situations, events, transactions, or causes.  *See id*.

Under the policy language, there can be no doubt that the Underlying Complaint and the

Underlying Amended Complaint constitute **Related Claims**.  The two **Claims** are made in the

same civil proceeding, and the Underlying Amended Complaint is a near-verbatim facsimile of

the Underlying Complaint in nearly all respects.  *See* Ex. C, Underlying Compl.  There is simply

---

[9] The Court may "properly look at public records, including judicial proceedings" when considering a 12(b)(6) motion.  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[10] In any event, courts have rejected arguments by insureds that medical impairment can serve as an excuse for compliance with a notice provision in a claims-made-and-reported policy, and this Court should do so as well as a matter of law.  *See St. Paul Fire & Marine Ins. Co. v. Estate of Hunt*, 811 P.2d 432, 435 (Colo. App. 1991) (notice provision enforced in claims-made-and-reported policy because "notice of a claim is a material condition precedent" even though insured physically could not give notice due to medical impairment).

no conceivable theory under which these two near-identical complaints do not have as a common nexus "*any* fact circumstance, situation, event, transaction, or cause."

The 19-20 Policy provides that where two **Claims** constitute **Related Claims**, the **Claims** are deemed first made at the time of the first such **Claim**. *See* Ex. B, 19-20 Policy, GTC, Reporting of Claims and Events, Section A.1., p. 19 of 25. The first such **Claim** was the Underlying Amended Complaint, which the Insureds concede was made during the period of the 18-19 Policy. *See* Compl. ¶ 20. Because the **Claim** was not first made during the **Policy Period** of the 19-20 Policy, no coverage is available under the 19-20 Policy.[11]

E.     **The Insureds' "bad faith" count must be dismissed.**

Count III of the complaint vaguely asserts "bad faith," but it is axiomatic that such a claim cannot survive if no coverage is available under the corresponding contract. Accordingly, for the other reasons set forth herein, that Count should likewise be dismissed.[12]

V.     **CONCLUSION**

For the reasons discussed above, AXIS respectfully requests that this Court dismiss Plaintiff's complaint with prejudice.

---

[11] *See, e.g.*, *Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1338 (S.D. Fla. 2009) ("If claims are considered 'related claims,' the only coverage available is that which was available under the policy in effect at the time the first claim is deemed to have been made."), *aff'd*, 374 F. App'x 906 (11th Cir. 2010); *In re DBSI, Inc.*, No. 08-12687, 2011 WL 3022177, at *3 (Bankr. D. Del. July 22, 2011) ("'Related Claims' provisions . . . allow insurers to confine related wrongful acts to a single policy period[.]").

[12] Even assuming arguendo that the Court declines to dismiss the Insureds' other counts, it should nonetheless dismiss Count III. Under Florida law, a "bad faith" claim is not ripe until the underlying dispute is resolved. *See, e.g.*, *Terenzio v. LM Gen. Ins. Co.*, 423 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019).

Dated:  February 16, 2021                    SMITH, KATZENSTEIN & JENKINS LLP

                                             _____*/s/ Robert J. Katzenstein*_____
                                             Robert Katzenstein (No. 378)
                                             Brandywine Building
                                             1000 West Street, Suite 1501
                                             P.O. Box 410
                                             Wilmington, DE 19899
                                             302-652-8400
                                             RJK@skjlaw.com

                                             *Counsel for Defendant AXIS Insurance*
                                             *Company*

                                             OF COUNSEL:

                                             Jason P. Cronic (*pro hac vice*)
                                             Matthew W. Beato (*pro hac vice*)
                                             WILEY REIN LLP
                                             1776 K Street NW
                                             Washington, DC 20006